## HART-WOOD LUMBER CO., PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2984. Promulgated January 25, 1927.

.. Certain losses sustained in business operations allocated to the years 1919 and 1920 and allowed as deductions from petitioner's gross income for such years.

2. Loss claimed on account of construction of a building on land held on an oral month-to-month lease not allowed in the absence of evidence establishing petitioner's rights under such oral lease or agreement.

3. Where a debtor without resources notifies his creditor of his intention to commit suicide and thereafter disappears, the debt becomes worthless and may not be reduced to the extent of the face value of a policy of insurance on the life of the debtor in which the creditor is named as beneficiary, since ultimate collection by the creditor of the proceeds of the policy is too uncertain to warrant consideration of the policy as a security of value.

*C. V. Rowe, C. P. A.,* and *Oscar T. Barber, Esq.,* for the petitioner.
*A. Calder Mackay, Esq.,* for the respondent.

The Commissioner has determined deficiencies in income and profits taxes for the years 1919 and 1920, in the respective amounts of $10,615.04 and $2,224.51, or a total of $12,839.55, of which approximately $7,800.15 is in controversy. The petitioner alleges that the Commissioner erred in disallowing certain deductions from its gross income for the taxable years which, it avers, were business losses and bad debts. It admitted at the hearing that the amount of $7,300 was properly disallowed and added to its gross income for the year 1919.

### FINDINGS OF FACT.

At the time involved in this proceeding, the petitioner was a Washington corporation, with its principal office at San Francisco, Calif., where it was engaged in the wholesale and retail lumber trade; Bergren and Sons was a partnership, engaged in building operations in California, with headquarters at San Francisco; and the Fidelity & Deposit Co. was a bonding corporation, with its principal office at Baltimore.

Bergren and Sons had contracts with the United States for the construction of buildings at Mare Island and with the State of California for the construction of buildings at Napa and Healdsburg. The Fidelity & Deposit Co. was surety on the bonds given by Bergren and Sons to assure the discharge of their obligations under such contracts. The petitioner, which had agreed to sell

lumber to Bergren and Sons for use in its building operations, had made a bond to indemnify the Fidelity & Deposit Co. for any losses the latter might sustain on account of its surety contracts for Bergren and Sons.

Sometime in 1919, finding that Bergren and Sons were hopelessly involved and actually insolvent, and that it must suffer heavily on account of their inability to meet their contractual obligations, the petitioner took over the Napa State Hospital construction and completed the work. In November, 1918, the petitioner arranged with L. G. Bergren to execute a deed in its favor for certain real estate in San Francisco, in partial recoupment for the losses it might sustain on account of the failure of the partnership to meet its obligations. The deed was in fee and was executed November 26, 1918. The property was mortgaged for about $6,000 and the grantee assumed the mortgage. It was known to both the parties in interest that the losses would exceed the value of the property conveyed and no arrangement was made looking to the return of any part of the value of the property deeded. The market value of the petitioner's equity in the property at the date of acquisition was $7,300, and that amount was realized from it by sale in 1921.

During the year 1919 two of the Bergren contracts were closed out at a loss, which was paid in full by the Fidelity & Deposit Co., and the petitioner made a compromise settlement of its obligations as indemnitor and paid that company 75 per cent of the loss sustained in the amount of $12,535.96, and, in its income-tax return for that year, deducted the amount so paid as a loss sustained during the taxable year. The Commissioner disallowed the deduction and added the amount thereof to the petitioner's gross income for such year. In 1920 a third Bergren contract was closed out and the loss sustained thereon was paid in full by the Fidelity & Deposit Co. In a compromise settlement of its obligations under the indemnity bond, the petitioner paid 75 per cent of this loss in the amount of $9,859.39 to said Fidelity & Deposit Co. in 1920, and deducted the same from its gross income in its income and profits-tax return for 1920 as a loss sustained during the taxable year. The Commissioner disallowed this deduction and added the amount thereof to the petitioner's gross income for such year.

In 1919 the petitioner erected a planing mill, at a cost of $2,322.80, on land which it occupied and used by virtue of an oral lease from month to month from the Southern Pacific Railroad Co., the owner.

At the beginning of the year 1920, J. S. Rae owed the petitioner $9,999. The only security for this indebtedness was an insurance policy for $5,000 on the life of Rae, in which the petitioner was

named as beneficiary. During the year 1920, the petitioner received a message from Rae, intimating that he intended to commit suicide, and since then petitioner has not heard from him. The insurance policy was issued less than one year before Rae's disappearance. The petitioner realized nothing from this policy during the taxable year, charged off the total amount of the Rae account as a bad debt in 1920, and deducted it from its gross income in its income and profits-tax return for that year. The Commissioner disallowed $5,000 of this deduction.

### OPINION.

LANSDON: The facts as to the first point in this proceeding are not in dispute. The petitioner paid the amounts of $12,535.96 and $9,859.39, respectively, in the years 1919 and 1920, to the Fidelity & Deposit Co. in discharge of its indemnifying bond to that concern on account of the Bergren and Sons contracts. In 1918, Bergren and Sons deeded to it property which had a fair market value of $7,300, which was to be applied on their obligation to the petitioner. The only issue here is whether such property was received, as suggested by the Commissioner, as security for the entire obligation of Bergren and Sons to the petitioner, or as a part payment of obligations known to be accrued at the time of transfer. The evidence convinces us that this payment was unconditional and that title passed as the result thereof. The petitioner concedes that its deduction from gross income for 1919 should be reduced by the amount of $7,300. On this point we are of the opinion that the petitioner is correct. It is entitled to deduct from its gross income in its income and profits-tax returns $12,535.96, less $7,300 for 1919, and $9,859.39 for 1920, as losses sustained during such years.

The evidence is conclusive that the petitioner expended the amount of $2,322.80 in 1919 in the construction of a building on land which it did not own, but which it occupied and used under an oral lease from month to month. This item was not included in any form in the petitioner's income and profits-tax return for 1920, and so has not been allowed or disallowed by the Commissioner, either as an operating loss or as an ordinary business expense. The petitioner now pleads that, as it had no lease on the land authorizing the use or occupancy thereof, the building, under the laws of California, became the property of the owner of the land, and its cost became a total loss to the petitioner at date of completion. It admits that it had some sort of oral lease or agreement with the owner of the land. In the absence of evidence, we are unable to determine the nature or terms of such agreement, or the rights of the petitioner thereunder, and we can not sustain its contention on this point.

In the year 1920, Rae owed the petitioner $9,999, and had no resources. He disappeared in May and sent the petitioner a message that he proposed to commit suicide. The petitioner held an insurance policy on the life of Rae taken out in March of 1920, in which it was designated as the beneficiary. The Commissioner does not dispute that Rae was unable to pay or that, as to him, the debt was worthless, but contends that the life insurance policy was security for such debt in the amount of $5,000, and that, to that extent, the debt was not worthless in the taxable year. The ultimate recovery of any part of the debt by the collection of the insurance policy depends on so many contingencies that it is hardly possible to regard such policy as security of any value. There may be a clause in the policy providing for cancellation in the event of suicide within twelve months of its issue. If death is not proved, seven years must elapse before it can be conclusively presumed. Calif. Code of Civil Procedure, 1923, sec. 1963, subdiv. 26. During such seven years the petitioner must keep the policy alive by the payment of annual premiums. Rae may not be dead or may reappear before the end of the seven-year period. We are of the opinion that the petitioner is entitled to deduct the entire amount of $9,999 from its gross income in its income and profits-tax returns for 1920.

> *Judgment will be entered on 20 days' notice, under Rule 50.*

MURDOCK concurs in the result only.